**Certiorari Denied, No. 31,896, September 15, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-118**

**Filing Date:  July 27, 2009**

**Docket No. 27,782**

**RICHEY E. CLARK and LYNOVA CLARK,**

       **Plaintiffs-Appellees**,

**v.**

**JERRY C. SIMS,**

       **Defendant-Appellant**,

**and**

**SUNFEATHER REPRODUCTIONS, INC., and
WELLS FARGO HOME MORTGAGE, INC.,**

       **Defendants.**

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY
Gary M. Jeffreys, District Judge**

Cynthia J. Patterson
Silver City, NM

for Appellees

William Perkins
Silver City, NM

for Appellant

**OPINION**

**FRY, Chief Judge.**

**{1}** This case involves an issue of first impression concerning a shareholder's standing to bring an individual action against another equal shareholder in a closely held corporation for a breach of fiduciary duty in the sale of corporate assets. The district court held that Jerry C. Sims breached his fiduciary duty to equal shareholders Richey E. Clark and Lynova Clark. Specifically, the district court found that Jerry Sims did not follow the provisions of NMSA 1978, Section 53-15-2 (1983), in transferring corporate-owned property to himself and his wife. The district court awarded the Clarks an undivided one-half interest in the property, $5,000 in punitive damages, and $16,065.18 in attorney fees. We affirm the district court's determination that the Clarks had standing to bring an individual suit against Jerry Sims for his breach of fiduciary duty. However, we reverse the district court's award of attorney fees because, absent a statute or other authority, attorney fees are not warranted. Jerry Sims does not appeal the award of punitive damages.

## BACKGROUND

**{2}** The Clarks went into business with Jerry Sims and his then wife Nancy Sims. In 1987, the Clarks and the Simses executed articles of incorporation for Sunfeather Reproductions, Inc. (Sunfeather), a business engaged in the assembly and sale of architectural cast aluminum fixtures. Jerry Sims was designated as president, his wife Nancy as secretary, Richey Clark as vice president, and Lynova Clark as treasurer. Each held an equal number of shares.

**{3}** In 1988, the Simses found a property (referred to as the Valley Drive property) where they could both reside and run the business. The Clarks advanced $5,000 as a down payment for the property, which the Simses repaid. The Simses executed a real estate contract for $55,000 for the Valley Drive property and named Sunfeather as the purchaser. The Simses agreed to make payments on the $50,000 balance of the purchase price in exchange for the right to live on the property until Sunfeather made enough of a profit to pay off the real estate contract.

**{4}** In 1992, the business waned, and it finally ceased operating at the end of 1993. By 1995, Sunfeather's only income consisted of the payments for the Valley Drive property, which were paid by the Simses, and its only asset was the Valley Drive property. There was no formal dissolution or division of assets after the business ceased operating. In 1996, Jerry Sims decided to refinance the Valley Drive property. Jerry Sims told his wife that he had spoken with the Clarks and that they agreed to the conveyance of the Valley Drive property to the Simses so that the Simses could obtain refinancing. In fact, the Clarks had not agreed to the transfer of the Valley Drive property to the Simses, there was no shareholder meeting to discuss the transfer, and the Clarks were not informed of the refinancing.

**{5}** The Simses, as president and secretary of Sunfeather, executed a warranty deed conveying the Valley Drive property to themselves. After paying off the real estate contract and closing costs, the refinance provided the Simses with $15,341.95 in new money. This new money was not used for or on behalf of Sunfeather, and the Clarks were not given any of the new money.

**{6}** In 2000, Jerry Sims executed a reverse mortgage and note secured by the Valley Drive property. After closing costs and payment of the prior refinance, Jerry Sims obtained a $9,329.31 line of credit. The Clarks were not informed of the reverse mortgage and did not receive any money from the line of credit. In 2001, Sunfeather's certificate of incorporation was cancelled, and the corporation was no longer active. The Clarks remained unaware of the property transfer until 2002, when they checked the county real estate records.

**{7}** The Clarks filed suit against the Simses, and the district court concluded that the Simses failed to follow the provisions of Section 53-15-2 in transferring the Valley Drive property to themselves. The district court determined that Jerry Sims acted in bad faith in not following the statutes governing corporations and acted in his own self-interest in obtaining money from the two refinances in Sunfeather's name, using Sunfeather's sole asset as security for the loans, and increasing Sunfeather's debt. The district court further concluded that "Jerry's actions were wrongful, in bad faith and a deliberate violation of his fiduciary duty to the shareholders." The district court ordered Jerry Sims to "buy out" the Clarks or, if Jerry Sims was unwilling or unable to do so, the property would be sold and the Clarks would be distributed their share, plus punitive damages and attorney fees. Jerry Sims appeals. Nancy Sims is no longer a party.[1]

## DISCUSSION

### Derivative vs. Individual Claim

**{8}** Sims argues that the Clarks lack standing to sue him individually and that a derivative suit should have been filed in order to comply with New Mexico standing requirements. We review the issue of standing de novo. *ACLU v. City of Albuquerque,* 2007-NMCA-092, ¶ 6, 142 N.M. 259, 164 P.3d 958, *aff'd by* 2008-NMSC-045, 144 N.M. 471, 188 P.3d 1222.

**{9}** Sims directs this Court to *Marchman v. NCNB Texas National Bank*, 120 N.M. 74, 898 P.2d 709 (1995), which discusses the requirements of bringing a direct (or individual) suit versus a derivative suit. *Marchman* applied the traditional rule and held that the shareholder in that case lacked individual standing to bring a direct action against third persons for damages resulting from an injury to the corporation, even though the shareholder was indirectly injured. *Id.* at 81-82, 898 P.2d at 716-17. *Marchman* identified two exceptions to this general rule: (1) when the shareholder has suffered a direct injury separate and distinct from the one suffered by other shareholders; or (2) when a special duty is owed by the wrongdoer, such as a contractual duty arising from an agreement made between the wrongdoer and a shareholder. *Id.* at 82, 898 P.2d at 717. Sims argues that the exceptions identified in *Marchman* do not apply.

---

[1]Jerry Sims and his ex-wife Nancy divorced, and as part of the settlement, Jerry Sims agreed to be liable for any indebtedness to the Clarks. Therefore, Nancy has no interest in the Valley Drive property. Jerry Sims remarried, but his new wife has no interest in the Valley Drive property either.

**{10}** In reference to the second exception, Sims contends that any fiduciary duty he owed to the Clarks was owed by virtue of their status as shareholders and that this shareholder status does not give rise to a special duty. We are not persuaded. In *Walta v. Gallegos Law Firm, P.C.*, 2002-NMCA-015, ¶ 35, 131 N.M. 544, 40 P.3d 449 (filed 2001), this Court adopted the Massachusetts approach to determining the duties and liabilities of shareholders in close corporations. *See Donahue v. Rodd Electrotype Co. of New England, Inc.*, 328 N.E.2d 505, 515 & n.17 (Mass. 1975). This approach analogizes the structure of a close corporation to a partnership, in which the law recognizes a special duty arising from a fiduciary duty of good faith and loyalty. Following *Donahue*, this Court stated, "The duty between shareholders of a close corporation is similar to that owed by directors, officers, and shareholders to the corporation itself; that is, loyalty, good faith, inherent fairness, and the obligation not to profit at the expense of the corporation." *Walta*, 2002-NMCA-015, ¶ 41. The *Donahue* case, on which the Court in *Walta* relied, noted that the fiduciary duty owed by shareholders in a close corporation to each other is a special duty in that it is more stringent than the fiduciary duty owed by shareholders in all other types of corporations. *See Donahue*, 328 N.E.2d at 515-16 (contrasting the "strict good faith standard" governing shareholders in close corporations "with the somewhat less stringent standard of fiduciary duty to which directors and stockholders of all corporations must adhere" (footnote omitted)). The *Walta* Court concluded, "[W]e hold that breach of this fiduciary duty can be asserted as an individual claim separate from the remedies available under our statutory corporate law for oppressive conduct." 2002-NMCA-015, ¶ 38.

**{11}** Sims argues that this Court adopted the Massachusetts approach only insofar as it imposes a duty owed by a majority shareholder to minority shareholders. *See McMinn v. MBF Operating Acquisition Corp.*, 2007-NMSC-040, ¶ 20, 142 N.M. 160, 164 P.3d 41 (applying holding and rationale adopted in *Walta*). He asserts that he was not a majority shareholder and did not utilize his authority as a shareholder to complete the transfer of the Valley Drive property. Therefore, he maintains that *Walta* and *McMinn* are distinguishable because they both involved a breach of fiduciary duty by a majority shareholder.

**{12}** It is true that *Walta* and *McMinn* involved a majority shareholder's duty to a minority shareholder. However, the question whether the same duty is owed among equal shareholders was not in contention in those cases and is an issue of first impression. *Donahue* expressly states, "We do not limit our holding to majority stockholders. In the close corporation, the minority may do equal damage through unscrupulous and improper sharp dealings with an unsuspecting majority." 328 N.E.2d at 515 n.17 (internal quotation marks omitted). In addition, this Court noted in *Walta* that "[t]he general rule has been sufficiently developed by appellate opinions to establish that *the fiduciary duty does not depend on shareholder control*, but rather arises out of the nature of a closely held corporation." *Walta*, 2002-NMCA-015, ¶ 34 (emphasis added). We agree and see no basis for denying the same duty of loyalty and care owed by a majority shareholder to minority shareholders just because the roles are reversed or where, as here, the shareholders hold equal stock in the corporation.

**{13}** Sims next argues that even if this Court were to determine that a fiduciary duty is owed among equal shareholders, it should require, as an element of the cause of action, a direct injury to the plaintiff shareholders. Sims contends that the nature of the injury must

4

be considered to determine whether a derivative or individual suit is warranted. *See Fate v. Owens*, 2001-NMCA-040, ¶ 23, 130 N.M. 503, 27 P.3d 990 (stating that "[i]n order to constitute an individual claim, as opposed to a partnerhsip claim, the breach [of fiduciary duty by the general partner] must cause an injury separate and distinct from an injury suffered by the partnership" (second alteration in original) (internal quotation marks and citation omitted)). Sims argues that the injury was indirect because the Clarks never claimed ownership of the Valley Drive property and their only injury was the devaluation of their shares in Sunfeather, which resulted when the property was transferred out of the corporation's name. Sims asserts that because the Clarks have not suffered a direct injury separate and distinct from the one suffered by the corporation, their only remedy is a derivative action. Sims relies on the cases cited in *Walta* for the contention that a plaintiff must prove a direct injury other than, or in addition to, the corporation's injury. *See A.W. Chesterton Co. v. Chesterton*, 128 F.3d 1, 6 (1st Cir. 1997) (determining a breach of fiduciary duty by a minority shareholder for attempting to sell stock to the detriment of the corporation and other shareholders); *Zimmerman v. Bogoff*, 524 N.E.2d 849, 853-54 (Mass. 1988) (determining a breach of fiduciary duty by a defendant shareholder for withholding corporate money that should have gone both to the plaintiff shareholder and the solely held corporation)
.

**{14}**     Sims misreads the applicable law. Our case law clarifies the type of direct injury that is necessary to support a direct action. In response to an argument identical to the one Sims makes here, this Court in *Healthsource, Inc. v. X-Ray Associates of New Mexico, P.C.*, stated that the direct action exception to the general rule requiring derivative suits was not "for a shareholder who suffers an injury that is separate and distinct from the corporation"; instead, the exception was "for a shareholder who suffers an injury separate and distinct from other shareholders." 2005-NMCA-097, ¶ 29, 138 N.M. 70, 116 P.3d 861.

**{15}**     The Clarks clearly suffered an injury distinct from any injury to the Simses. Several years after the corporation ceased operating, Sims transferred the corporation's sole asset to himself and took cash out of the asset through his refinance of the Valley Drive property. At this point, the Simses were in a much better position than the Clarks. The Simses owned a piece of real estate, while the Clarks owned worthless stock in a defunct corporation. *Cf. Donahue*, 328 N.E.2d at 518 (holding that a close corporation's directors breached the fiduciary duty owed to other shareholders and that "[p]urchase by the corporation confers substantial benefits on the members of the controlling group whose shares were purchased [and t]hese benefits are not available to the minority stockholders if the corporation does not also offer them an opportunity to sell their shares").

**{16}**     In addition, we think that the general rule requiring derivative suits—as well as the exceptions to the rule, such as the requirement for a distinct and separate injury—should not be stringently enforced when the corporation in question is a closely held one, like Sunfeather.[2] A leading treatise supports our view:

---

[2]A close corporation is "one typified by: (1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." *Walta*, 2002-NMCA-015,

5

> Courts sometimes recognize the right of a close corporation shareholder to sue directly, as an individual, on a cause of action that would normally have to be brought derivatively. This is because of the special treatment sometimes accorded close corporations and their similarity to partnerships.

12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations*, § 5911.50, at 527-28 (2009) (footnote omitted). As we have discussed, in New Mexico there is precedent for according close corporations treatment similar to that accorded partnerships. *See Walta*, 2002-NMCA-015, ¶ 41 ("The duty between shareholders of a close corporation is similar to that owed by directors, officers, and shareholders to the corporation itself; that is, loyalty, good faith, inherent fairness, and the obligation not to profit at the expense of the corporation."). Another treatise observes that "[t]he derivative/direct distinction makes little sense when the only interested parties are two individuals or sets of shareholders, one who is in control and the other who is not. In this context, the debate over derivative status can become purely technical." 2 F. Hodge O'Neal & Robert B. Thompson, *O'Neal and Thompson's Close Corporations & LLCs: Law & Practice* § 9.22, at 138-39 (3d ed. 2008) (internal quotation marks omitted) (footnote omitted). Indeed, this treatise cites *Walta* as "authority for a direct shareholder cause of action in a close corporation." 2 O'Neal & Thompson, *supra*, § 9.22, at 141-42 & n.53.

**{17}** Relaxing the traditional distinction between derivative and direct suits makes sense under the circumstances of this case. The commentators provide the explanation. Fletcher notes that

> [r]easons underlying the traditional rule include: (1) it prevents a multiplicity of lawsuits by shareholders; (2) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; (3) it protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and (4) it adequately compensates the injured shareholder by increasing the value of his shares.

12B Fletcher, *supra*, § 5911.50, at 531 (footnote omitted). But, as observed by O'Neal & Thompson, these reasons are not compelling in the context of the close corporation. "There is no practical need to insist on derivative suits when there is little likelihood of a multiplicity of suits or harm to creditors" when shareholders in a close corporation are engaged in controversy. 2 O'Neal & Thompson, *supra*, § 9.22, at 139 (footnote omitted). "Any recovery in a derivative suit would return funds to the control of the defendant, rather than to the injured party." *Id.* at 139-40.

**{18}** The American Law Institute recommends as follows:

---

¶ 32 (internal quotation marks and citation omitted).

6

In the case of a closely held corporation . . . , the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

2 A.L.I., *Principles of Corporate Governance: Analysis and Recommendations* § 7.01(d) (1994). In the present case, it is clear that allowing the Clarks direct recovery will not give rise to a multiplicity of lawsuits because the only remaining shareholders in the now-defunct corporation are the Clarks and Jerry Sims. Nor will the Clarks' recovery prejudice any creditors of the corporation because the applicable statutes of limitations on such claims will likely have long since run. And there is no problem with fair distribution of the recovery because the only persons interested in the recovery are the Clarks.

**{19}** We conclude that the Clarks had standing to assert individual claims against Sims for breach of the fiduciary duty he owed them to demonstrate "loyalty, good faith, inherent fairness, and the obligation not to profit at the expense of the corporation." *Walta*, 2002-NMCA-015, ¶ 41. We therefore affirm the district court's judgment in favor of the Clarks on this issue.

**Attorney Fees**

**{20}** Sims argues that attorney fees were improperly awarded because there is no statute or other authority to support such an award. We review the award of attorney fees for an abuse of discretion. *N.M. Right to Choose/NARAL v. Johnson,* 1999-NMSC-028, ¶ 6, 127 N.M. 654, 986 P.2d 450. However, we review the application of the law to the facts de novo. *Id.* ¶ 7. "Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Id.* (alteration omitted) (internal quotation marks and citation omitted).

**{21}** New Mexico follows the American rule regarding attorney fees, which is that, absent statutory or other authority, such as court rule or a contractual agreement, each party should bear its own attorney fees. *Id.* ¶ 9. "The exceptions we have recognized are limited in number and narrow in scope." *Id.* ¶ 15. They include "(1) exceptions arising from a court's inherent powers to sanction the bad faith conduct of litigants and attorneys, (2) exceptions arising from certain exercises of a court's equitable powers, and (3) exceptions arising simultaneously from judicial and legislative powers." *Id.*

**{22}** The Clarks argue that the third exception applies based on Sims's breach of fiduciary duty. The Clarks rely on *Bassett v. Bassett*, which held that when a partner breaches the fiduciary duty owed to another partner, the court may exercise its equitable power to award attorney fees to the aggrieved partner. 110 N.M. 559, 564, 798 P.2d 160, 165 (1990). The Clarks assert that the exception in *Bassett* should also apply to closely held corporations. On the other hand, Sims contends that our Supreme Court has only allowed a few exceptions under this category, including cases of divorce, child custody, and breach of fiduciary duty.

7

*See N.M. Right to Choose/NARAL,* 1999-NMSC-028, ¶ 25. Sims further asserts that courts applying the equitable powers exception for breaches of fiduciary duty have done so only when supported by statute.

**{23}** In *Bassett*, the Supreme Court pointed to the partnership statutes requiring (1) complete accounting by a partner for profits derived without the consent of the other partners and (2) indemnification of a partner entitled to rescind a partnership contract on the basis of another partner's fraud. 110 N.M. at 564, 798 P.2d at 165. The Court stated that these statutes "requir[ed] strict compliance between partners in their duty to deal with one another as fiduciaries fully, honestly and openly." *Id.* While the common law has recognized that the same fiduciary duties owed in a partnership are owed between shareholders in a close corporation, there appears to be no similar statutory basis applicable to such corporations.

**{24}** In *Turpin v. Smedinghoff*, 117 N.M. 598, 601, 874 P.2d 1262, 1265 (1994), the Supreme Court stated,

> In light of the interpretation of the Washington cases and our reluctance to award attorney[] fees absent an express statute, court rule, or contract providing for such award, we clarify that *Bassett* stands for the proposition that the partnership statutes imply the basis for an award of attorney[] fees only when there has been a breach of fiduciary duty as a result of constructive fraud that results in actual harm or when one partner sues in order to maintain the common fund.

"*Bassett* was based on specific statutes requiring partners to account to one another, to hold profits as trustees, and to indemnify the aggrieved partner." *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 116 N.M. 751, 753, 867 P.2d 421, 423 (Ct. App. 1993), *rev'd in part on other grounds*, 120 N.M. 1, 896 P.2d 1148 (1995). The partnership statutes imply the basis for an award of attorney fees, but only under limited circumstances. *Turpin*, 117 N.M. at 601, 874 P.2d at 1265; *cf.* NMSA 1978, § 54-1-21(A) (1995) (repealed 1997) (current versions at NMSA 1978, Sections 54-1A-401(j) and -404 (1996)) (detailing the fiduciary duties owed between partners). Because there are no comparable statutes governing corporations, we hold that attorney fees are not recoverable under the equitable powers exception. Accordingly, we reverse the district court's award of attorney fees. In addition, for the same reasons, we deny the Clarks' request for an award of attorney fees incurred in this appeal.

**Damages Pursuant to NMSA 1978, Section 39-3-27 (1966)**

**{25}** The Clarks ask us to award them damages pursuant to Section 39-3-27, which provides, "Upon the affirmation of any judgment or decision, the supreme court or court of appeals may award to the appellee or defendant in error damages not exceeding ten percent of the judgment complained of, as may be deemed just by the court." While Section 39-3-27 permits this Court to assess damages against a party where an appeal is found to be frivolous or for the purpose of delay, "we also recognize that a court should be reluctant to penalize litigants who take advantage of their right to appeal." *Genuine Parts Co. v. Garcia*, 92 N.M. 57, 63, 582 P.2d 1270, 1276 (1978).

**{26}**  The Clarks request the award on grounds that the law is well settled in matters regarding derivative-versus-individual suits and that it is within the district court's inherent equitable authority to award attorney fees in cases where a breach of fiduciary duty has occurred.  Contrary to the Clarks' assertion, the question presented by the facts of this case raises an issue of first impression.  While the general propositions of law governing derivative suits versus individual actions may be settled, how they are applied to the various corporate and partnership schemes is far from established.  *Cf. Chavez v. Lovelace Sandia Health Sys., Inc.*, 2008-NMCA-104, ¶ 41, 144 N.M. 578, 189 P.3d 711 ("One cannot begin to count the number of cases this Court sees in which a party and its counsel ask this Court to revisit and modify or distinguish what the opposing party contends is controlling precedent.").  New Mexico has had to look to commentators and case law from other jurisdictions for guidance in these matters.  Therefore, we disagree with the contention that the law is well settled.

**{27}**  In addition, the Clarks assert that this Court informed the parties of its proposed disposition (apparently referring to pleadings filed in the course of our internal calendaring process) and the applicable law and rationale, but that Sims nevertheless continued to pursue the appeal.  However, the notice of proposed disposition is merely a proposal of how the Court views the case; it is not a final decision.  The party opposing the proposed disposition has the opportunity to file a memorandum telling the Court any reasons why the proposed disposition should or should not be made.  Rule 12-210(D) NMRA.  We will not punish a party for opposing the proposed disposition, which is permitted under our appellate rules.

**{28}**  The Clarks further argue that the appeal appears to have been pursued for the purpose of delay because although Sims was ordered to sell the property in order to pay the judgment, he has not done so, and the sale cannot be completed until the appeal is resolved.  Thus, the Clarks contend that Sims's pursuit of the appeal is frivolous and not in good faith.  However, there is no evidence before this Court indicating that Sims filed this appeal for purposes of delay.  *Cf. Anderson v. Jenkins Constr. Co.*, 83 N.M. 47, 50, 487 P.2d 1352, 1355 (Ct. App. 1971) (concluding that an appeal was frivolous when the defendant took more than sixty days after the receipt of the transcript to file a brief-in-chief, the defendant did not challenge the district court's findings and conclusions and, although the defendant stipulated to be bound by an expert's findings in the district court, on appeal there were unreasonable deviations from those findings and, finally, the defendant did not deny the allegation that the appeal was brought in order to delay a final determination).  Therefore, we deny the Clarks' request for damages.

**CONCLUSION**

**{29}**  We affirm the judgment of the district court insofar as it concludes that the Clarks had standing to bring an individual action against Sims for breaching the fiduciary duty owed to them.  However, we reverse the district court's award of attorney fees. We deny the Clarks' request for damages pursuant to Section 39-3-27.

**{30}  IT IS SO ORDERED.**

9

_____<br>
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *Clark v. Sims*, No. 27,782**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AF | Attorney Fees |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SD | Standing |
| | |
| **CS** | **CORPORATIONS** |
| CS-AF | Attorney Fees |
| CS-BY | Bylaws |
| CS-DA | Derivative Action |
| CS-SL | Shareholder Rights and Liabilities |
| | |
| **RE** | **REMEDIES** |
| RE-PU | Punitive Damages |