This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DAVID STALKER, M.D., P.C.,**

    Plaintiff-Appellant,

v.                             **NO. 30,615**

**STEPHEN HAYNES, M.D., P.C.**
**and ASSOCIATED PHYSICIANS &**
**SURGEONS, LLC,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Stephen Doerr
Portales, NM

for Appellant

Rowley Law Firm, LLC
Richard F. Rowley II
Clovis, NM

for Appellees

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

Appellant David Stalker, P.C. (Stalker, P.C.), a New Mexico corporation, brought suit against Stephen Haynes, P.C. (Haynes, P.C.) and Associated Physicians & Surgeons, LLC (APS). APS is a limited liability corporation with the two P.C.s as its members. In its complaint, Stalker, P.C. alleged breach of contract and sought an accounting, liquidation and distribution of property and profits; damages; and injunctive relief. The district court found for Stalker, P.C. and granted judgment against APS in the amount of $99,667.58. Stalker, P.C. contends that the district court erred in not awarding the judgment against both APS and Haynes, P.C. We affirm.

## I.    BACKGROUND

The basic facts that led to this claim are not in dispute. APS was originally formed in 1996 as a three-member LLC but had become a two-member operation by 2004 when talks began to dissolve APS and have the P.C.s join another group of physicians and surgeons, Eastern New Mexico Physicians and Surgeons, LLC (Eastern). Stalker, P.C. claimed that in January 2006, Haynes, P.C. changed the way in which the profits of APS were to be distributed. Stalker, P.C. objected, and David Stalker left the practice at the end of January 2006. The members agreed to dissolve APS; the eventual distribution of assets, primarily accounts receivable as well as furniture, fixtures, and equipment, is the subject of the suit. APS had not been

dissolved by the time of the March 10, 2010 trial.

At trial, David Stalker was the only witness. Because the parties are familiar with the testimony, we provide only a short summary here for purposes of background. He testified that his monthly payments after January 2006 were less than what was agreed to; that Haynes, P.C. received additional money from APS; and that some APS funds went unaccounted for. Stalker also claimed that, beginning in February 2006, Stephen Haynes had the locks changed on the building, refused to return phone calls, and withheld financial information. Stalker further testified that rather than return to him his half of the furniture, fixtures, and equipment, Haynes, P.C. and APS transferred all the items to Eastern to cover each doctor's financial contribution to Eastern as originally agreed to by the parties. There were a number of exhibits regarding the value of the assets of APS.

After the one-day trial, the district court ruled in favor of Haynes, P.C., but against APS, which was ordered to pay $89,520.08 for accounts receivable owed to Stalker, P.C., and $10,147.50 for Stalker, P.C.'s one-half share of furniture, fixtures, and equipment. In its findings, the court found that at the time Stalker physically left the practice, Stalker, P.C. and Haynes, P.C. were the sole members of APS and that they agreed that Stalker, P.C. "would receive the accounts receivable owned and collected by APS under Stalker's medical provider number(s) . . . less twenty percent"

and that each of the P.C.s would receive half of the furniture, fixtures, and equipment of APS. The court concluded that this was a valid, binding agreement to address the division of the assets of APS upon Stalker, P.C.'s departure. It made no findings regarding wrongdoing by Haynes, P.C. as to the assets of APS even though Stalker, P.C. had requested them. Essentially, the district court determined that APS was liable to Stalker, P.C. but that Haynes, P.C. was not.

On appeal, Stalker, P.C. makes three main arguments: First, it contends that judgment should have also been against Haynes, P.C, on a theory of breach of fiduciary duty. In the alternative, Stalker argues that judgment should have been against both APS and Haynes, P.C. because Stalker, P.C.'s damages were caused by "[Haynes'] breach of the Agreement" resulting in profit to Haynes, P.C. Third, Stalker, P.C. seeks an award of attorney fees. We address those points in order.

## II. DISCUSSION

### A. Breach of Fiduciary Duty

In determining a standard of review, we normally apply a substantial evidence review to the question of whether a district court properly concluded that a fiduciary duty was owed between members of a closely held corporation. *See Peters Corp. v. N.M. Banquest Investors Corp.*, 2008-NMSC-039, ¶ 35, 144 N.M. 434, 188 P.3d 1185. But here, where the district court made no findings or conclusions regarding

4

a fiduciary duty, we apply a de novo review. *Cf. Mayeux v. Winder*, 2006-NMCA-028, ¶ 14, 139 N.M. 235, 131 P.3d 85 (employing a de novo review to decide whether a district court erred in applying the wrong legal standards to their breach of fiduciary duty claim).

Stalker, P.C. first argues that Haynes, P.C. owed a fiduciary duty to Stalker, P.C. and breached that duty by interfering with the distribution of both the accounts receivable and the furniture, fixtures, and equipment. Stalker, P.C. bases this claim on its position that Haynes, P.C. owed a fiduciary duty to Stalker, P.C. and breached that duty by paying itself additional sums of money from APS, thus draining APS's reserves. Haynes, P.C. counters by arguing that no allegation was raised in the complaint or at trial stating breach of fiduciary duty as a cause of action. Haynes, P.C. also contends that non-managerial members of an LLC are not liable to the LLC or its members, and therefore it had no fiduciary duty to Stalker, P.C. Finally, Haynes, P.C. argues that substantial evidence supports the district court's finding that Stalker, P.C. was not entitled to a judgment against Haynes, P.C., but only against APS.

The duties and liabilities of members of an LLC are guided by New Mexico's Limited Liability Company Act (Act), specifically in NMSA 1978, Section 53-19-16(A) (1995):

> [A] member who is not a manager and is not vested with particular management responsibilities by the articles of organization or an

> operating agreement shall not be liable to the limited liability company or to the other members solely by reason of his act or omission in his capacity as a member[.]

However, the Act also states that "[u]nless displaced by particular provisions of the . . . Act, the principles of law and equity supplement that act, including such principles applicable to corporations and their owners." NMSA 1978, § 53-19-65(B) (1993). In addition, New Mexico courts have recognized that a managing member of a limited liability company owes a fiduciary duty to other members and that the member, as opposed to the limited liability company, may be sued for a breach of fiduciary duty. *See Clark v. Sims*, 2009-NMCA-118, ¶¶ 10-12, 147 N.M. 252, 219 P.3d 20 (holding that equal shareholders in a close corporation owe one another a fiduciary duty and may be sued for the tort of breach of fiduciary duty); *Mayeux*, 2006-NMCA-028, ¶¶ 10-33 (assuming without discussion that a managing member of a limited liability company owed a fiduciary duty to the non-managing member, and analyzing whether the evidence supported the district court's finding that the duty had not been breached); *Walta v. Gallegos Law Firm, P.C.*, 2002-NMCA-015, ¶ 41, 131 N.M. 544, 40 P.3d 449 (concluding that "[t]he duty between shareholders of a close corporation is similar to that owed by directors, officers, and shareholders to the corporation itself; that is, loyalty, good faith, inherent fairness, and the obligation not to profit at the expense of the corporation").

6

Whether Haynes, P.C. owed a fiduciary duty to Stalker, P.C. and whether it breached that duty, however, are not issues we reach, because we agree with Haynes, P.C.'s contention that the issue was not properly raised during the proceedings. We explain. Our review of the record shows that Stalker, P.C. did not adequately plead the cause of action for breach of fiduciary duty and failed to raise the issue at trial. Stalker, P.C.'s first mention of a fiduciary duty and its breach came one month after trial when, in response to the district court's decision, it submitted its proposed findings of fact and conclusions of law.

"The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds upon which they are based." *Schmitz v. Smentowski*, 109 N.M. 386, 389, 785 P.2d 726, 729 (1990). "Generally, the trial court may not grant judgment for relief which is neither requested by the pleadings nor within the theory on which the case was tried." *Credit Inst. v. Veterinary Nutrition Corp.*, 2003-NMCA-010, ¶ 19, 133 N.M. 248, 62 P.3d 339 (internal quotation marks and citation omitted).

> [O]ur Supreme Court has also underscored the need for notice to the opposing party, so that an opposing party may not be prejudiced by a late shift in the theory of the case. Due process still requires that the opposing party have notice and an opportunity to defend against the theory not stated in the pleadings.

*Id.* ¶ 25. In this case, breach of fiduciary duty was not raised in the pleadings.

We recognize that a grant of relief is not confined to that requested in the pleadings. *See* Rule 1-054(C) NMRA ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."); *Lett v. Westland Dev. Co.*, 112 N.M. 327, 328, 815 P.2d 623, 624 (1991) ("While a prayer for relief may be helpful in specifying the contentions of the parties, it forms no part of the pleader's cause of action, and the prevailing party should be given whatever relief he is entitled to under the facts pleaded and proved at trial."). We also recognize that an issue not raised in the pleadings may be found to have been tried with the implicit consent of the other party under certain circumstances. *See Bellet v. Grynberg*, 114 N.M. 690, 692, 845 P.2d 784, 786 (1992). Our Supreme Court has noted:

> Even if a theory was not pleaded, if it was tried by implied consent it indicates that the party was aware of the unpleaded theory being alleged and had the opportunity to defend against it, thereby preventing a finding of prejudice. However, implied consent to a theory is not indicated when unobjected-to-evidence is relevant to other pleaded theories.

*Id.*

We therefore consider whether the issue of breach of fiduciary duty, even though not alleged in the complaint, was raised before or during trial. In *Bellet*, the district court had found that the issue of usury, raised as an affirmative defense, had

8

been tried with the plaintiff's implied consent. *Id.* Our Supreme Court reversed, concluding that the issue had not been tried by implied consent. *Id.* at 692, 695, 845 P.2d at 786, 789. The Court found it significant that the word "usury" did not come up during the trial, and it concluded that the testimony found to be relevant to the usury defense was pertinent to other issues that were tried. *Id.* at 692, 845 P.2d at 786. The Court noted: "By the time the [a]ppellees raised the defense of usury in their requested findings of fact and conclusions of law, [the appellant] to his prejudice was precluded from introducing this additional evidence." *Id.*

Like the appellant in *Bellet*, Haynes, P.C. had no opportunity to defend against the allegation of breach of fiduciary duty; nor did Haynes, P.C. give implied consent to the issue being tried before the district court. Not only did Stalker, P.C.'s complaint fail to allege breach of fiduciary duty, but even when responding to Haynes, P.C.'s motion to dismiss two days before trial, Stalker, P.C. relied only on its original complaint and did not allege a breach of fiduciary duty. Nor was the issue brought up during the trial; in fact, the phrase "fiduciary duty" was not used during the trial. The testimony of David Stalker, related in detail below, concerned the allegations of breach of contract and did not signal or serve notice to Haynes, P.C. that the additional allegation of breach of fiduciary duty was being alleged.

In the end, the district court rejected Stalker, P.C.'s proposed conclusion of law

9

that Haynes, P.C. owed a fiduciary duty to its partner; the court made no finding and drew no conclusions related to any fiduciary duty owed by Haynes, P.C. The court also rejected Haynes, P.C.'s own proposed conclusion of law stating that no fiduciary relationship existed between the partners. The court refused to consider the issue to have been alleged in the complaint or raised at trial. We conclude that Stalker, P.C. failed to adequately allege or try the issue of breach of fiduciary duty on the part of Haynes, P.C. and that the district court did not err by excluding any mention of this theory in its findings and conclusions.

**B.	Haynes, P.C.'s Liability**

Stalker, P.C. argues in the alternative that even if Haynes, P.C. did not owe a fiduciary duty, "the undisputed evidence clearly established that Stalker[, P.C.]'s damages were caused by [Haynes'] breach of the Agreement and[] that Haynes profited from the same." In essence, Stalker, P.C. is challenging the district court's findings of fact and conclusions of law, which presents us with a mixed question of law and fact. "When the [district] court's findings of fact are supported by substantial evidence, . . . refusal to make contrary findings is not error." *Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 22, 123 N.M. 60, 933 P.2d 859. "When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing

10

party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary." *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991); *see Cortez v. Cortez*, 2009-NMSC-008, ¶ 7, 145 N.M. 642, 203 P.3d 857 ("We apply a de novo standard of review to address the legal conclusions of the district court."); *Allen v. Timberlake Ranch Landowners Ass'n*, 2005-NMCA-115, ¶ 13, 138 N.M. 318, 119 P.3d 743 ("In cases such as this, we use the substantial evidence standard for review of the facts and then conduct a de novo review of the trial court's application of the law to those facts.").

Stalker, P.C. relies on our analysis in *Bogle v. Summit Investment Co.*, 2005-NMCA-024, ¶ 20, 137 N.M. 80, 107 P.3d 520, and argues that "Haynes, as a member of APS could be held personally liable to Stalker[, P.C.] for his own conduct[.]" It is unclear whether Stalker, P.C. is referring to Haynes, P.C. or to Haynes individually. To the extent the reference is to Haynes individually, we observe that Haynes is not a party to this cause of action; only his company is. We therefore limit our analysis to the applicability of *Bogle* to Haynes, P.C.

In *Bogle*, a case that involved a dispute over a commission on a sale of real property, real estate brokers for Summit Investment Co., sued Summit and its managing member for breach of contract and tort claims. 2005-NMCA-024, ¶ 1. We

11

held that a managing member of an LLC could be held personally liable under tort for intentional interference of a contract, though we concluded that the evidence in *Bogle* did not support such a finding against the managing member. 2005-NMCA-024, ¶¶ 19, 21. Our analysis involved a five-part test that establishes the burden on a plaintiff seeking to establish such liability. 2005-NMCA-024, ¶ 20. A plaintiff must show that (1) the defendant had knowledge of the contract, (2) performance of the contract was refused, (3) the defendant played an active and substantial part in causing the plaintiff to lose the benefits of the contract, (4) damages resulted from the breach, and (5) the defendant induced the breach without justification. *Id.*

We first note that *Bogle* can be distinguished on its facts from the case before us. *Bogle* revolved around the liability of a managing member of an LLC and that member's actions toward a third party, not a fellow LLC member. Here, we have a non-managing member, Haynes, P.C., allegedly taking action against a fellow member of the LLC. Nevertheless, even if we do evaluate the five factors as they apply to Haynes, P.C., we see no error by the district court.

We observe that Stalker, P.C. made arguments based on *Bogle* in its post-trial memorandum. The district court rendered its opinion and requested proposed findings of fact and conclusions of law. Stalker, P.C. included language to support the imposition of liability based on *Bogle* in its proposed findings and conclusions of law.

12

On appeal, Stalker, P.C. argues that factors one, two, and four of the *Bogle* test were established by the findings of the district court. Even if we were to agree with that assertion, there were no findings of fact adopted by the district court as to factors two and five. On the contrary, Stalker, P.C. proposed findings of fact as to these two factors and the proposed findings were refused, as were the conclusions based on the same argument. The district court weighed the testimony and credibility of Stalker as to the distribution of assets of APS.

Based on the evidence presented and inferences that could be made from that evidence, the district court found that APS—and only APS—was liable to Stalker, P.C. We cannot say that the court's evaluation of the evidence presented and the inference made therefrom did not support the district court's findings and conclusions. *See Insure New Mexico, LLC v. McGonigle*, 2000-NMCA-018, ¶ 8, 128 N.M. 611, 995 P.2d 1053 ("We will reverse only when the evidence, or reasonable inferences from the evidence, cannot support the [district] court's findings and conclusions."). In essence, Stalker, P.C. would like us to conclude that there was evidence to support the five factors set out in *Bogle*. This we cannot do. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Because there are no

13

findings to support at least two of the five factors, *Bogle* is inapplicable.

Finally, Stalker, P.C. contends that Haynes, P.C. or Haynes individually is liable for acts on behalf of APS that rose to the level of gross negligence or willful misconduct in violation of Section 53-19-16(B). Stalker, P.C. points to no evidence in the record to support that assertion, nor is there showing that the issue was addressed below or preserved. We decline to address the contention because we have no duty to review an argument that is not adequately developed. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that relied on several factual assertions that were made without citation to the record).

**C.    Attorney Fees**

Stalker, P.C. also challenges the district court's rejection of its request for attorney fees. We review a refusal to award attorney fees under an abuse of discretion standard. *In re Estate of Gardner*, 114 N.M. 793, 804, 845 P.2d 1247, 1258 (Ct. App. 1992). A district court abuses its discretion when its ruling "exceeds the bounds of all reason" or is "arbitrary, fanciful, or unreasonable." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 29, 128 N.M. 536, 994 P.2d 1154 (internal quotation marks and citation omitted).

New Mexico follows the "American rule" regarding attorney fees, which holds

that, "absent statutory or other authority, litigants are responsible for their own attorney[] fees." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted). Under that rule, attorney fees may be awarded pursuant to a statute, a court rule, or by contractual agreement. *Id.* Courts may consider "limited, narrow exceptions" to this rule, *id.* ¶ 15, such as where a partner fraudulently "breaches the fiduciary duty owed another partner." *Bassett v. Bassett*, 110 N.M. 559, 564, 798 P.2d 160, 165 (1990), *modified on other grounds as recognized by Clark*, 2009-NMCA-118, ¶¶ 22-24. Our Supreme Court "has been reluctant to extend awards of attorney[] fees except in limited circumstances" or "rare instances." *Turpin v. Smedinghoff*, 117 N.M. 598, 601, 874 P.2d 1262, 1265 (1994) (internal quotation marks and citation omitted); *see Clark*, 2009-NMCA-118, ¶ 24 (distinguishing statutes governing corporations from those governing partnerships for purposes of assessing attorney fees and concluding that, under the laws of corporations, such fees "are not recoverable under the equitable powers exception").

In the case before us, no statute authorized the award of attorney fees, and no evidence of fraud by Haynes, P.C. was put forth by Stalker, P.C. The rejection of attorney fees by the district court cannot be said to have "exceed[ed] the bounds of all reason" or be considered "arbitrary, fanciful, or unreasonable." *Meiboom*,

15

2000-NMSC-004, ¶ 29 (internal quotation marks and citation omitted).  The district court did not err in rejecting Stalker, P.C.'s request for attorney fees.

**III.    CONCLUSION**

For the foregoing reasons, we affirm the district court's finding that Haynes, P.C. is not liable for the judgment and the court's denial of attorney fees.

**IT IS SO ORDERED.**


_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Judge**



_____
**MICHAEL E. VIGIL, Judge**