This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JEFFERSON-PILOT INVESTMENTS, INC.,**

Plaintiff-Appellee,

v.                                                              **No. 34,933**

**COTTONWOOD PHASE V, LLC,**

Defendant-Appellant,

and

**COTTONWOOD PHASE V, LLC,**

Third-Party Plaintiff,

v.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,**

Third-Party Defendant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Emil J. Kiehne
Albuquerque, NM

Quarles & Brady, LLP
Faye B. Feinstein

Chicago, IL

for Appellee

Hatch Law Firm, LLC
Stanley N. Hatch
Jesse C. Hatch
Brook Gotberg
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Cottonwood Phase V, LLC (CPV) appeals from the district court's decision to distribute certain funds to Jefferson-Pilot Investments, Inc. (JPI), and from the denial of CPV's motion for reconsideration of the decision. The funds distributed to JPI were generated in a bankruptcy proceeding involving Circuit City. We affirm the decision of the district court.

**I.    BACKGROUND**

{2}     In 2004 CPV leased land (the Property) to Circuit City. Circuit City built a 34,000-square-foot store on the Property. Pursuant to the lease, CPV had a two-year option to purchase building improvements made by Circuit City and to re-lease the building to Circuit City. If CPV did not exercise the option, Circuit City had the right to purchase the Property as well as the infrastructure, building, and improvements on

the Property. In 2006 CPV exercised its option under the lease to purchase the building improvements constructed by Circuit City on the Property and to re-lease the Property and building to Circuit City.

{3} In order to purchase the building and improvements made by Circuit City, CPV obtained a $3,500,000 loan from Lincoln Jefferson-Pilot Life Insurance Company, predecessor-in-interest to JPI.[1] CPV executed a Promissory Note (Note) and a Mortgage, Security Agreement and Fixture Filing (Mortgage). CPV also executed an Absolute Assignment of Rents and Profits and Collateral Assignment of Leases (Assignment). The Note, Mortgage, and Assignment together are referred to by the parties as the Loan Documents.

{4} CPV used the loan from JPI to pay close to $2,600,000 for the building improvements plus commissions and costs for the transaction, leaving a balance of approximately $600,000 in reserve to make monthly payments on the loan in the event that Circuit City stopped paying rent. CPV knew, at the time the loan was negotiated, that a reserve might be needed to make payments on the loan based on Circuit City's credit, references, and financial situation. Circuit City filed for bankruptcy in November 2008, vacated the Property and building in March 2009, and rejected the

[1]Jefferson-Pilot Life Insurance Company merged with The Lincoln National Life Insurance Company (Lincoln) after the loan was closed, and Lincoln assigned the loan to JPI on May 25, 2010.

3

lease. CPV continued to make monthly payments on the loan, using monies from its reserve fund until April 2010 when CPV defaulted on the loan. At the time of default, CPV had close to $400,000 in its reserve fund, which could have been used to pay monthly payments on the loan, but was instead distributed to it members.

{5} CPV filed a proof of claim in Circuit City's bankruptcy case, claiming lease-rejection damages described as unpaid pre-petition rents, rents owed for the remainder of the lease, and taxes. In the bankruptcy case involving Circuit City, a settlement was reached that resulted in an award to CPV of approximately $1,350,000, for breach of the lease. JPI sent a written demand to the Liquidating Trustee appointed in the bankruptcy case claiming that it should be substituted as the claim holder for the Circuit City funds. A receiver appointed by the district court took custody of the Circuit City funds, and the funds were eventually placed into the court registry. CPV and JPI filed motions with the district court asking that the funds be distributed to them.

{6} On June 3, 2010, after CPV's default on the loan, JPI notified CPV that it was accelerating the loan. On July 16, 2010, JPI filed a complaint for debt and foreclosure in the district court. CPV filed its own bankruptcy petition, but the case was dismissed in May 2012 after the bankruptcy court's consideration of CPV's motion to dismiss and JPI's motion to convert.

{7}     Once back in district court, the parties entered into a settlement agreement. A stipulated judgment, order of sale, appointment of a special master, and decree of foreclosure (Stipulated Judgment) was entered against CPV and in favor of JPI for $6,037,000.24, with interest to continue until satisfaction of the judgment. The lien created by the Mortgage was foreclosed, the Property that secured the Mortgage was to be sold, and the proceeds applied to the amount of the stipulated judgment. The Property included the real property, improvements, personal property, and collateral. "Collateral" is described as including, "without limitation (a) all revenues, income, rents, cash or security deposits, advance rental deposits, and other benefits thereof or arising from the use or enjoyment of all or any portion of the real property subject to the Mortgage." The district court found, "[e]ach of the Mortgage and the Assignment secures all obligations owed by CPV under the Note."

{8}     The Stipulated Judgment provided that, in the event that CPV failed to timely pay $4,500,000 to JPI on or before April 30, 2014, JPI would be authorized to proceed with the foreclosure sale. If, however, CPV timely paid the amount owed, the foreclosure would not occur, and JPI would release the Circuit City funds. The Stipulated Judgment also contained an agreement that if CPV did not pay the settlement amount, the court would schedule a hearing on the parties' respective claims to the Circuit City funds. CPV did not timely pay the amount owed under the

5

settlement agreement and Stipulated Judgment, and the Property was sold. JPI bid $4,500,000 for the Property, leaving a balance on the Judgment of $1,881,659.95. Subsequently the parties filed competing motions claiming entitlement to the Circuit City funds. CPV filed a request for evidentiary hearing on the issue of how the Circuit City funds should be distributed. The district court did not hold an evidentiary hearing on that issue. Instead, the district court issued a memorandum opinion based on "the plain language of the Loan Documents," granting the Circuit City funds to JPI. CPV filed a motion for reconsideration, which was denied.

## II.    DISCUSSION

**Assignment—Distribution of Circuit City Funds**

{9}    CPV claims that it was error for the district court: (1) to award the Circuit City funds to JPI, and (2) to make a decision in this case without holding an evidentiary hearing. JPI disputes those claims and counters that it is entitled to the Circuit City funds.

{10}    According to CPV, the district court's memorandum opinion explicitly limited its ruling to its analysis of the Assignment. CPV claims that JPI's reference to the Mortgage and Note falls outside the scope of this appeal because the Loan Documents were collapsed into the Stipulated Judgment. The district court cites and refers to all three documents in its memorandum opinion, although it relies mainly on the

6

Assignment. The district court explained that the entire lawsuit concerned CPV's default under the Note and Mortgage, the Note and Mortgage were collapsed into the Stipulated Judgment and resulted in a dollar figure representing every obligation under the Note and Mortgage, and the Stipulated Judgment extinguished all of CPV's liabilities, with the exception of the disputed Circuit City funds. As a result, the distribution of the Circuit City funds remained a viable issue.

{11} The district court found the Assignment to be unambiguous. In making a preliminary determination on the question of ambiguity, a court may consider extrinsic evidence. *See Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 845 P.2d 1232. The court may consider collateral evidence of the circumstances surrounding the making of the agreement "and of any relevant usage of trade, course of dealing, and course of performance" in order to determine whether the agreement language is clear. *C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 15, 112 N.M. 504, 817 P.2d 238. There is ambiguity in an agreement when "the parties' expressions of mutual assent" lack clarity. *Id.* ¶ 15 n.2. On the other hand, if the court determines that the evidence is "so clear that no reasonable person [would hold] in any way but one[,]" the court may decide that the agreement is unambiguous as a matter of law. *Id.* ¶ 17.

{12} The Assignment, under the heading "Absolute Assignment of Rents and Profits," provides that JPI was entitled to:

> [a]ll of the rents, income, profits, revenue, sums payable by lease guarantors, judgments . . . *and any other fees or sums payable to Assignor* or any other person as landlord and other benefits and rights of the Property arising from the use, occupancy, operation or management of all or any portion thereof *or from all the Leases and any proceeds, deposits or security deposits . . . relating thereto, including, without limitation, any award to Assignor made hereafter in any court involving any of the tenants under the Leases in any bankruptcy*, insolvency, or reorganization proceeding in any state or federal court, and Assignor's right to appear in any action [and] to collect any such award or payment, and all payments by any tenant in lieu of rent (collectively, "Rents and Profits").

(Emphases added.) The district court concluded that the Circuit City funds were included in "any benefit, proceeds, award, [and] judgment involving a tenant in a bankruptcy proceeding." The district court determined that the funds were awarded in the bankruptcy court case that involved Circuit City as the tenant under the lease with CPV, and the funds "fit within the definition of 'Rents or Profits.' " The district court also concluded that there was no support for the idea that Circuit City's lease rejection "transmuted" CPV's proceeds from the lease-rejection claim to such an extent that CPV's obligations under the Loan Documents were voided. We agree.

{13} CPV argues that the Circuit City funds are lease-rejection damages and cannot be considered rents and profits, as argued by JPI, because they did not arise from "the use, occupancy, operation or management of" all or any portion of the lease. However,

8

the "lease-rejection damages" were described in CPV's proof of claim as past rent and future rent owed under the lease with Circuit City. Furthermore, in addition to all rents, income, profits, revenue, and sums payable by lease guarantors, the Assignment specifically includes "any other fees or sums payable to Assignor" and "other benefits and rights" arising from "the use, occupancy, operation or management of" the Property "or from all the Leases" as well as any proceeds "relating thereto [to the Leases], including, without limitation, any award to Assignor made hereafter in any court involving any of the tenants under the Leases in any bankruptcy."

{14} Even if we agree that the Circuit City funds would not fall within a commonly accepted definition for rent or profit, the funds qualify as monies that CPV assigned rights to because they fit within the language of the paragraph labeled "Absolute Assignment of Rents and Profits." The Assignment specifically covers rents and profits, but also covers other fees and sums payable to CPV and any proceeds and bankruptcy awards related to the leases. Thus, the clear language of the Assignment covers the Circuit City funds, regardless of how they are categorized.

{15} CPV makes a number of other arguments. CPV claims that the Circuit City funds do not qualify as arising from "the use, occupancy, operation or management of" all or any portion of the Property. At the time the funds were awarded by the bankruptcy court, CPV was the sole entity operating or managing the Property. The

9

funds were derived from CPV's operation or management of the Property and no other source. The Circuit City funds were awarded in its bankruptcy proceeding as a result of Circuit City's actions with respect to the lease agreement between Circuit City and CPV. We conclude that the only reasonable interpretation of the language is that fees or sums that were awarded to CPV in the bankruptcy proceeding fit within the terms of the Assignment, and were properly awarded to JPI.

{16}    CPV also argues that JPI was required to file a proof of claim in the Circuit City bankruptcy case in order to recover from the Circuit City estate. CPV states that recovery by JPI is barred because of the failure to file such a proof of claim. Circuit City was not a party to the Assignment and there was no privity between Circuit City and JPI. JPI's claim was against CPV, not Circuit City, and JPI had no claim to assert against Circuit City, the bankruptcy debtor. CPV cites no authority in support of its argument that a non-party to a bankruptcy must file a proof of claim in order to assert its rights to certain funds, simply because those funds were generated by the bankruptcy. We therefore do not consider this argument any further. *See  ITT Educ. Servs., Inc. v. N.M. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority).

{17} CPV further argues, in very general terms, that if an evidentiary hearing had been held, it would have presented evidence to show the parties' intentions, understandings, and interpretations of the Assignment language.

{18} In its reply brief, CPV states that it would have presented testimony and evidence that the Circuit City funds were not rents or profits, but were lease-rejection damages. As we have explained, whether the funds are considered rents and profits or lease-rejection damages, they fall within the Assignment language. CPV claims that it would have presented evidence that the parties understood that the Property would be "the only source of recourse for the loan." CPV does not provide a citation to the record, but it appears that CPV, in making this argument, is referring to the portion of the Note titled, "Limitation on Recourse." As argued by CPV, the Note and Mortgage were collapsed into the Stipulated Judgment, and it is the Assignment that governs the issues in this case.

{19} The pertinent issue before us is whether the district court erred in finding the Assignment to be unambiguous. CPV makes very general arguments that it was prepared to present evidence that the lease with Circuit City had ended when the bankruptcy court awarded lease-rejection damages, the contract language could only have applied to a then-existing lease, and that the parties had agreed that any recourse for payment of the Note was limited to property rights. However, CPV does not

11

provide this Court with specifics about evidence that it might have presented to show that an ambiguity existed in the Assignment. CPV does not explain how any evidence it wished to present would alter the plain meaning of the Assignment language. Consequently, CPV provided insufficient justification to the district court for holding an evidentiary hearing in this case.

**Request for Attorney Fees, Costs, and Damages**

{20} JPI requests attorney fees, pursuant to Rule 12-403(B)(3) NMRA (1993, amended 2016). Rule 12-403(B)(3) allows for "reasonable attorney fees for services rendered on appeal in causes where the award of attorney fees is permitted by law." Generally, each party to a lawsuit pays its own attorney fees unless fees are authorized by statute or agreement. *See, e.g.*, *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 1991-NMSC-097, ¶ 21, 113 N.M. 9, 820 P.2d 1323. JPI argues that the Assignment provides that Assignee will be indemnified for and held harmless from any and all costs and expenses, including reasonable attorney fees.

> Assignor shall and does hereby agree to indemnify Assignee for and to defend and hold Assignee harmless from any and all obligations, liabilities, losses, costs, expenses, . . . or damages (including reasonable attorneys[ ] fees) which Assignee may incur under the Leases, . . . or under or by reason of this Assignment[.]

{21} CPV claims that the provision in the Assignment is designed to indemnify JPI for claims brought by or against third parties, such as lessees. However, *Black's Law*

12

*Dictionary* defines "indemnify" as, "[t]o reimburse . . . for a loss suffered because of a third party's *or one's own act or default*; hold harmless." *Black's Law Dictionary* 886 (10th ed. 2014) (emphasis added). The language of the Assignment "under or by reason of this Assignment" indicates that JPI is to be reimbursed for attorney fees expended in enforcing the Assignment against CPV. As a result, JPI's request for attorney fees is granted. On remand, the district court shall determine the attorney fees amount to be awarded to JPI for this appeal.

**{22}** JPI requests costs, pursuant to Rule 12-403(A). Rule 12-403(A) provides that "[i]n all proceedings in the appellate court the party prevailing shall recover the party's costs unless otherwise provided by law, by these rules, or unless the court shall otherwise determine." As the prevailing party, JPI is entitled to costs incurred in responding to CPV's appeal. On remand, the district court shall determine the costs to be awarded to JPI for this appeal.

**{23}** JPI also requests that this Court award damages under Rule 12-403(B)(4). JPI argues that, by filing this appeal, CPV wants to "correct a strategic decision that it now regrets." In particular, JPI claims that CPV could have offered evidence to the district court both before and after the hearing in which the court stated that it may decide the case as a matter of law. JPI also argues that, given the clear and unambiguous language of the Assignment, CPV's arguments with respect to

interpretation of the language are frivolous. Rule 12-403(B)(4) allows for the award of damages under NMSA 1978, Section 39-3-27 (1966), if this Court determines that CPV's appeal is "frivolous, not in good faith, or merely for purposes of delay." JPI has not shown CPV's appeal was frivolous, not in good faith, or merely for purposes of delay; therefore its request for damages is denied. CPV's appellate arguments required our consideration, but even though we were not persuaded, it does not reduce its appeal to frivolous, not in good faith, or merely for purposes of delay. *See Genuine Parts Co. v. Garcia*, 1978-NMSC-059, ¶ 30, 92 N.M. 57, 582 P.2d 1270 ("[A] court should be reluctant to penalize litigants who take advantage of their right to appeal."); *Durrett v. Petritsis*, 1970-NMSC-119, ¶ 15, 82 N.M. 1, 474 P.2d 487 (holding that "[a]lthough we have found the appeal to lack merit, it does not follow that it was not in good faith" (internal quotation marks and citation omitted)); *Clark v. Sims*, 2009-NMCA-118, ¶ 28, 147 N.M. 252, 219 P.3d 20 (holding that without evidence before the appeals court to support a claim that the appeal was pursued for purposes of delay, damages will not be awarded).

**III.    CONCLUSION**

{24}    For the foregoing reasons, we affirm the district court's decision and remand for determination of appellate attorney fees and costs.

{25}    **IT IS SO ORDERED.**


_____
                                **M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**JONATHAN B. SUTIN, Judge**