# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 21, 2015

**NO. 33,187**

**CYNTHIA R. HERALD, M.D.,**

      Plaintiff-Appellant/Cross-Appellee,

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, a body corporate of the STATE OF NEW MEXICO, for itself and its public operations including BOARD OF DIRECTORS OF THE UNIVERSITY OF NEW MEXICO HEALTH SCIENCES CENTER, UNIVERSITY OF NEW MEXICO HEALTH SCIENCES CENTER and its components the UNIVERSITY OF NEW MEXICO HOSPITAL and UNIVERSITY OF NEW MEXICO SCHOOL OF MEDICINE,**

      Defendant-Appellee/Cross-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Curtis & Lucero
Lisa K. Curtis
Amalia S. Lucero
Albuquerque, NM

Law Offices of E. Justin Pennington
E. Justin Pennington
Albuquerque, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

Wiggins, Williams & Wiggins, P.C.
Patricia G. Williams
Albuquerque, NM

for Appellee

**_____OPINION**

**SUTIN, Judge.**

{1}     Plaintiff Cynthia Herald, M.D., sued the Board of Regents of the University of New Mexico (Defendant) after she was discharged from the residency program at the University of New Mexico School of Medicine. She claimed that her termination was driven by discrimination and retaliation in violation of the New Mexico Human Rights Act (the HRA), NMSA 1978, §§ 28-1-1 to -15 (1969, as amended through 2007), and the Whistleblower Protection Act (the WPA), NMSA 1978, §§ 10-16C-1 to -6 (2010). She also stated claims under the New Mexico Tort Claims Act (the TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2015), and for breach of contract. Underlying these claims was Plaintiff's theory that Defendant's alleged discriminatory and retaliatory actions toward her, including her termination, stemmed from and were related to Plaintiff's allegation that she had been raped by a fellow participant in the residency program.

{2}     The district court dismissed Plaintiff's TCA and WPA claims, and the court granted summary judgment in favor of Defendant as to Plaintiff's breach of contract claim. The district court construed Plaintiff's complaint as stating three claims under the HRA, namely, disparate treatment, sex discrimination, and retaliation. As to disparate treatment, the district court granted summary judgment in favor of

Defendant. Plaintiff's claims of sex discrimination and retaliation pursuant to the HRA were tried before a jury; the jury found in favor of Defendant on both claims.

{3} On appeal, Plaintiff challenges the district court's WPA and TCA dismissal orders and its order granting summary judgment as to her breach of contract claim. She also argues that the court erred in its instructions to the jury on her HRA claim. We reverse the district court's dismissal of Plaintiff's WPA claims on statutory construction grounds. As to Plaintiff's remaining arguments, we affirm the district court.

{4} Defendant cross appeals, claiming that the district court erred in denying its requested costs and attorney fees. We reverse the district court's denial of costs associated with Defendant's electronic filing fees because we hold that it was premised on a misapplication of the relevant law. We affirm on the remaining issues.

**BACKGROUND**

{5} After graduating from medical school, Plaintiff enrolled in the University of New Mexico School of Medicine (the School) as a post-doctoral fellow and resident physician in anesthesiology (the residency program) in June 2008. As a participant in the residency program, Plaintiff was both an employee and a student at the University of New Mexico (UNM), with responsibilities as a "house staff physician for patients" at UNM Hospital, as well as having a responsibility to participate in

2

educational activities. Plaintiff's involvement with the residency program was formalized in a "Graduate Medical Education Agreement" between Defendant and Plaintiff; this agreement served as Plaintiff's employment contract.

{6} In June 2009, Plaintiff visited the home of a man who was "senior to Plaintiff" in the residency program (the senior resident), and who, by virtue of his greater experience, education, and training, supervised Plaintiff's work. Plaintiff claimed that while she was in his home, the senior resident raped her. In September 2009, Plaintiff reported the alleged rape to the Associate Dean for Graduate Medical Education, Dr. David Sklar; Residency Program Director, Dr. James Harding; and Chairman of the Department of Anesthesiology, Dr. John Wills (collectively, the residency administrators). Plaintiff never reported the alleged rape to a law enforcement agency, and the senior resident was never charged with or convicted of any crime as a result of Plaintiff's allegation that he raped her.

{7} In June 2010, Plaintiff was terminated from the residency program. A "notice of final action" letter to Plaintiff, signed by Doctors Wills and Sklar, detailed the School's decision to terminate Plaintiff from the residency program on "administrative misconduct" grounds. The letter enumerated several findings that led to the School's conclusion that Plaintiff had committed various forms of administrative misconduct. Those findings included that Plaintiff was impaired and

incompetent while on duty at UNM Hospital as a result of ingesting Schedule IV narcotics; that an investigation revealed that Plaintiff's hospital-issued narcotic pack was missing Schedule II and IV controlled substances and that Plaintiff had altered a document pertaining to the content of the narcotic pack so as to hide the discrepancy; and that, in contravention of the School's policy, Plaintiff had repeatedly filled prescriptions issued to her by other participants in the residency program, many of which may have been falsified by Plaintiff in an unlawful use of the other residents' institutional DEA numbers. As well, the letter stated that Plaintiff had refused to attend meetings, refused to discuss her impairment and related issues, deliberately lied to the School so as to obstruct the investigation, and had attempted to convince an attending physician to take the blame for the discrepancy in her narcotic pack.

{8}     Following her termination from the residency program, Plaintiff filed a complaint with the New Mexico Department of Workforce Solutions, Human Rights Bureau alleging that she had suffered sex discrimination and retaliation culminating in her termination from the residency program. She received an order of non-determination from the Labor Relations Division of the Human Rights Bureau allowing her to pursue her HRA claim in district court. *See* § 28-1-10(D) (stating that "[a] person who has filed a complaint with the human rights division may request and

4

shall receive an order of non[-]determination from the director"); § 28-1-13(A) (stating that the order of non-determination may be appealed to the district court where the complainant may obtain a trial de novo).

{9} Plaintiff filed a "notice of appeal [from the order of non-determination] and complaint for negligent supervision [under the TCA], wrongful discharge[,] and violation of civil rights" against Defendant in district court. In her complaint, Plaintiff alleged the following. After she reported to the residency administrators that the senior resident had raped her, they discouraged her from reporting the alleged rape to law enforcement so as to avoid damaging the reputation of the School and UNM Hospital. Defendant failed to investigate the rape allegation and failed to "provide appropriate assistance" to her. And, although her "documented performance continued to be satisfactory through December 2009," after she reported the alleged rape, she was subjected to "heightened scrutiny and increased criticisms" by Defendant's agents.

{10} Plaintiff further alleged that, on an unspecified date, she requested but was denied a medical leave of absence so that she could seek and participate in medical treatment for the alleged rape. She also alleged that her physical, psychological, and emotional condition deteriorated after she reported the alleged rape to the residency administrators and that on January 14, 2010, Dr. Harding requested that she resign

from the residency program based on "performance deficiencies and unspecified 'global problems.'" She then repeated her request for a medical leave of absence, and the request was granted. When she returned to work, she was advised that, owing to deficient clinical performance, she would be subject to a three-month period of formal remediation during which her clinical performance would be assessed regularly.

{11} Plaintiff alleged that, after she returned to work, she was not periodically assessed, but to the extent that she was assessed, her performance was deemed satisfactory, and without a final assessment, the remediation period concluded in April 2010. Finally, Plaintiff's complaint stated facts that have already been addressed in this Opinion, pertaining to her alleged impairment on duty on May 4, 2010, and her termination from the residency program.

{12} Based on the foregoing factual allegations, Plaintiff stated four overarching claims: negligent supervision under the TCA, wrongful discharge for a breach of an employment contract, wrongful discharge by retaliation contrary to the WPA, and retaliation and sex discrimination contrary to the HRA.

{13} Before answering Plaintiff's complaint, Defendant filed two motions to dismiss, one seeking dismissal of Plaintiff's WPA claims and another seeking dismissal of Plaintiff's negligent supervision and breach of contract claims. For reasons that are discussed later in this Opinion, the district court granted Defendant's

6

motion to dismiss Plaintiff's WPA claims and TCA claims, and the court denied Defendant's motion to dismiss Plaintiff's breach of contract claim.

{14} Notwithstanding the court's orders of dismissal, Plaintiff filed a first amended notice of appeal and first amended complaint for failure to properly operate a hospital, wrongful discharge, and violation of civil rights (the amended complaint) that re-stated all of the claims in the original complaint. According to Plaintiff, the substantive differences between the original complaint and the amended complaint were that the amended complaint made it clear that the WPA claims were "in the alternative and/or in addition to the relief and remedies of the other causes of action"; and that, unlike the original complaint, the amended complaint specified that Plaintiff's tort claim was based on an alleged "failure to properly operate a hospital[.]" With the exception of the previously dismissed WPA and TCA claims, which the court ruled remained dismissed, the district court permitted Plaintiff to proceed on the amended complaint.

{15} After Defendant answered Plaintiff's amended complaint, Defendant filed two motions for summary judgment, one pertaining to Plaintiff's breach of contract claim and another pertaining to her HRA claims. Plaintiff filed responses in opposition to both motions for summary judgment. The details of the parties' arguments will be discussed as necessary in the body of this Opinion.

7

{16} Based on the parties' written arguments and the arguments made at a hearing on the motions for summary judgment, the district court granted summary judgment in favor of Defendant as to Plaintiff's breach of contract claim. As to Plaintiff's HRA claims, the district court ruled that, to the extent that Plaintiff raised a claim of sex discrimination on the theory of disparate treatment, summary judgment should be granted in Defendant's favor. To the extent that Plaintiff's HRA claims for sex discrimination were based on a theory of hostile work environment and of retaliation based on the theory of opposition to unlawful discrimination, the court denied summary judgment and allowed the claims to be tried before a jury.

{17} A jury determined that Plaintiff failed to prove that Defendant unlawfully retaliated or unlawfully discriminated against her. The district court entered a judgment on the verdict ordering that "Plaintiff take nothing[.]" Thereafter, Defendant sought costs pursuant to Rule 1-054(D) NMRA and, on the ground that it had made two offers of settlement, both of which had been rejected by Plaintiff, it sought costs pursuant to Rule 1-068 NMRA. Defendant also sought attorney fees. The district court awarded Defendant its partial costs but denied its request for attorney fees.

{18} On appeal, Plaintiff argues that the district court dismissed her WPA claims based on its erroneous determination that the WPA and the HRA are irreconcilable

8

and on its related conclusion that Plaintiff could therefore only proceed under the HRA. Plaintiff also argues that erroneous legal determinations led the district court to grant summary judgment in favor of Defendant on Plaintiff's breach of contract claim. Additionally, Plaintiff argues that the district court's decision to dismiss her tort claims was based on its misconstruction of the TCA. And finally, Plaintiff argues that because the jury instructions did not accurately reflect the relevant law, the instructions confused and misled the jury. On these bases, Plaintiff seeks reversal. In a cross-appeal, Defendant argues that the district court erred in not awarding attorney fees and in not awarding its full costs or, alternatively, double costs.

{19} We conclude that the district court erred in dismissing Plaintiff's WPA claims on the ground that the WPA and the HRA are irreconcilably conflicting. Accordingly, we reverse the court's dismissal of Plaintiff's WPA claims and remand for further proceedings as to that claim. Plaintiff's remaining arguments provide no grounds for reversal.

{20} We conclude that the district court's denial of Defendant's electronic filing fees on the ground that they are not recoverable under the applicable rule was based on a misinterpretation of the law and remand for further consideration of that issue. Defendant's remaining arguments pertaining to costs and attorney fees do not demonstrate grounds for reversal.

9

**DISCUSSION**

**A.      Plaintiff's Arguments**

{21}     Plaintiff's arguments present issues of law that are reviewed de novo. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 10, 309 P.3d 1047 (stating that statutory construction is a question of law that an appellate court reviews de novo); *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853 (stating that the appellate court reviews "jury instructions de novo to determine whether they correctly state the law" (internal quotation marks and citation omitted)); *Lopez v. Las Cruces Police Dep't*, 2006-NMCA-074, ¶ 10, 139 N.M. 730, 137 P.3d 670 (stating that orders pertaining to summary judgment and motions to dismiss are reviewed de novo).

**1.      Plaintiff's Argument That the District Court Erred in Dismissing Her WPA Claims**

{22}     Plaintiff's respective HRA and WPA claims arose out of her claim that because she reported the alleged rape to the residency administrators, Defendant took various retaliatory actions against her that ultimately culminated in terminating her from the residency program. In its motion to dismiss Plaintiff's WPA claims, Defendant argued that the HRA provides the exclusive remedy for Plaintiff's retaliation claim. The district court agreed and dismissed Plaintiff's WPA claims. We begin by reviewing the relevant provisions of the HRA and the WPA.

### i.    The HRA

{23}    The HRA provides that it is an unlawful discriminatory practice for an employer to discharge or discriminate based on an employee's sex when that employee is otherwise qualified, in matters of terms, conditions, or privileges of employment. Section 28-1-7(A). It is also an unlawful discriminatory practice for any employer to "aid, abet, incite, compel[,] or coerce the doing of any unlawful discriminatory practice or to attempt to do so" or to "engage in any form of . . . reprisal or discrimination against any person who has opposed any unlawful discriminatory practice[.]" Section 28-1-7(I)(1), (2). A person claiming to be aggrieved by an unlawful discriminatory practice may file a written complaint with the Human Rights Division, thus prompting a series of administrative processes, or she may request an order of non-determination. *See generally* § 28-1-10. An aggrieved employee may obtain a trial de novo in the district court either from an order of the commission following the administrative process or from an order of non-determination. Section 28-1-10(D); § 28-1-13(A).

### ii.    The WPA

{24}    The WPA applies exclusively to public employers and public employees. Section 10-16C-3. Among other things, the WPA prohibits a public employer from taking any retaliatory action against a public employee because the public employee:

11

"communicates to the public employer . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act" or "objects to or refuses to participate in an activity, policy[,] or practice that constitutes an unlawful or improper act." Section 10-16C-3(A), (C). A "retaliatory action" is defined in the WPA as "any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment[.]" Section 10-16C-2(D). The WPA enumerates the remedies that are available to a public employee who prevails in a lawsuit and provides that those remedies "are not exclusive and shall be in addition to any other remedies provided for in any other law[.]" Section 10-16C-4(A), (C).

**iii.    Plaintiff Was Entitled to State Claims Under the HRA and the WPA**

{25}    Statutory interpretation is driven primarily by the language in a statute, and the language of remedial statutes, including the HRA and the WPA, must be liberally construed. *See Whitely v. State Pers. Bd.*, 1993-NMSC-019, ¶ 5, 115 N.M. 308, 850 P.2d 1011 (stating that the language used by Legislature in a statute is the primary indicator of legislative intent); *Las Campanas Ltd. P'ship v. Pribble*, 1997-NMCA-055, ¶ 15, 123 N.M. 520, 943 P.2d 554 (stating that remedial statutes must be liberally construed). With these principles in mind, we observe that the WPA expressly provides that its remedies "shall be in addition to any other remedies

12

provided for in any other law[.]" Section 10-16C-4(C). Further, we observe that, although the HRA is silent on the issue of exclusivity, our Supreme Court has interpreted this silence to mean that the Legislature did not intend the HRA's remedies to be exclusive. *See Gandy v. Wal-Mart Stores, Inc.*, 1994-NMSC-040, ¶ 8, 117 N.M. 441, 872 P.2d 859 (stating that the language of the HRA "is permissive [insofar as it] contains no declaration that the remedies [that] it provides are exclusive" and holding, therefore, that the Legislature "did not intend the [HRA's] remedies to be exclusive").

{26}     In light of our Supreme Court's discussion of the HRA in *Gandy*, and based upon the language in Section 10-16C-4(C) of the WPA, we conclude that the Legislature did not intend the HRA to provide Plaintiff's exclusive remedy in this case. Our conclusion, supported by the Legislature's language, also comports with a liberal construction of the two statutes. The district court's reasons for reaching the opposite conclusion are not persuasive.

{27}     "Statutes are not to be read in a manner that would make portions of them superfluous." *State Dep't of Labor v. Echostar Commc'ns Corp.*, 2006-NMCA-047, ¶ 6, 139 N.M. 493, 134 P.3d 780. In construing legislative intent to reach its conclusion that the HRA provided Plaintiff's exclusive remedy, the district court omitted any discussion of the express provision in Section 10-16C-4(C) that the

13

remedies in the WPA "shall be in addition to any other remedies provided for in any other law[.]" Having omitted consideration of that language, which ostensibly allows a plaintiff to state a WPA claim alongside a claim under any other law, including the HRA, the district court concluded that there was a conflict between the WPA and the HRA that rendered them irreconcilable.

{28} In the context of statutory construction, a determination that two legislatively enacted provisions irreconcilably conflict is not favored. *See Luboyeski v. Hill*, 1994-NMSC-032, ¶ 10, 117 N.M. 380, 872 P.2d 353 ("Whenever possible, [the appellate courts] must read different legislative enactments as harmonious instead of as contradicting one another."); *see also* NMSA 1978, § 12-2A-10(A) (1997) (stating that "[i]f statutes appear to conflict, they must be construed, if possible, to give effect to each"). This is because there is a presumption that the Legislature is aware of existing laws and would not intend to enact new legislation that irreconcilably conflicts with existing laws. *See Luboyeski*, 1994-NMSC-032, ¶ 10 (stating that the Legislature is presumed not to have intended to enact a law that is inconsistent with existing laws). Thus, the district court's conclusion that the HRA and the WPA are irreconcilably conflicting is out of step with general principles of statutory construction, particularly in light of the language in Section 10-16C-4(C).

14

{29}    In support of its conclusion that there was an irreconcilable conflict between the HRA and the WPA, the district court stated that: (1) unlike the WPA, the HRA "provides a comprehensive administrative process . . . which must be exhausted as a prerequisite to suit"; (2) the two acts have different statutes of limitations; and (3) the two acts differ in terms of the recovery available to a successful claimant. Defendant urges this Court to rely on these distinctions to affirm the district court's decision. We decline to do so.

{30}    We begin with the different statutes of limitations and the different recoveries available to a successful claimant. Here, the district court did not explain why these differences necessarily placed the HRA and the WPA in irreconcilable conflict. And, on appeal, Defendant has failed to as well. We see no reason to conclude that these distinctions create an irreconcilable conflict between the two acts.

{31}    The HRA and the WPA may be read harmoniously, giving effect to each, notwithstanding the different statutes of limitations and the different remedies available to a successful claimant. We assume that any plaintiff who wished to file claims pursuant to the HRA and the WPA would understand the need to do so within the earlier statute of limitations of the HRA to avoid dismissal of the HRA claim on timeliness grounds. *See* § 28-1-10(A) (providing a three-hundred-day statute of limitations for filing claims under the HRA); § 10-16C-6 (providing a two-year

15

statute of limitations for filing claims under the WPA). In the present case, Plaintiff's HRA and WPA claims were timely brought within the same complaint.

{32} Additionally, that the HRA and the WPA provide different remedies for a successful claimant does not create an irreconcilable conflict. *See* § 28-1-13(D) (providing that, pursuant to the district court's discretion, a successful claimant under the HRA may receive "actual damages and reasonable attorney fees"); § 10-16C-4(A) (stating that a public employer that violates the WPA "shall be liable to the public employee for actual damages, reinstatement with the same seniority status that the employee would have had but for the violation, two times the amount of back pay with interest on the back pay and compensation for any special damage sustained as a result of the violation . . . . [and the] employer shall be required to pay the litigation costs and reasonable attorney fees of the employee"). To the extent that a plaintiff is successful under both theories and to the extent that the remedies overlap, it is incumbent on the district court to prevent impermissible double recovery. *Hood v. Fulkerson*, 1985-NMSC-048, ¶ 12, 102 N.M. 677, 699 P.2d 608 (stating that "[d]uplication of damages or double recovery for injuries received is not permissible" and "[w]here there are different theories of recovery and liability is found on each, but the relief requested was the same . . ., the injured party is entitled to [recover a particular type of damages] award [only once]"); *see Gandy*, 1994-NMSC-040, ¶ 12

16

("We are confident that an appropriate exercise of discretion by the district courts . . . will prevent double recovery[.]").

{33} In regard to its conclusion that the HRA "provides a comprehensive administrative process . . . which must be exhausted as a prerequisite to suit," the district court reasoned that allowing a public employee to frame retaliation-based disputes as WPA claims instead of HRA claims would frustrate the Legislature's intent, reflected in the HRA, to require aggrieved employees to pursue administrative remedies. But here, Plaintiff satisfied the grievance procedure of the HRA by requesting and receiving an order of non-determination and then appealing that order in the district court. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 16, 127 N.M. 282, 980 P.2d 65 (explaining that the process of requesting and receiving an order of non-determination signals that the claimant has complied with the HRA grievance procedures and may proceed to court). The order of non-determination allowed Plaintiff to bring her HRA and non-HRA claims, including her WPA claim, before the district court in a single lawsuit.

{34} That the Legislature provided a procedure in the HRA by which a claimant may proceed to court on her claim after requesting and receiving an order of non-determination precludes the conclusion that the Legislature intended to require a claimant, in every instance, to proceed through a comprehensive administrative

17

process before the Human Rights Commission before bringing her claim to court. *See, e.g.*, § 28-1-10(B), (C), (F) (describing an administrative process that includes, in part, an investigation by the director of the Human Rights Division, potentially followed by an attempt of persuasion or conciliation, possibly followed by a hearing before the Human Rights Commission). Rather, as demonstrated in this case, a claimant may essentially circumvent the more extensive administrative processes contemplated by the HRA by requesting and receiving, without delay, an order of non-determination that may then be appealed in a trial de novo in the district court. *See* § 28-1-10(D) ("A person who has filed a complaint with the [H]uman [R]ights [D]ivision may request and shall receive an order of non[-]determination from the director without delay[.]"); § 28-1-13(A) (stating that the order of non-determination may then be appealed to the district court where the complainant may obtain a trial de novo).

{35}     In sum, we reverse the district court's order dismissing Plaintiff's WPA claims on the ground that the HRA and WPA are in irreconcilable conflict and that, therefore, the HRA is the exclusive remedy for Plaintiff's retaliation claim.

**iv.     Defendant's Arguments in Opposition to Remanding Plaintiff's WPA Claims for Trial**

{36}     Defendant argues that even if this Court reverses the dismissal of Plaintiff's WPA claims, Plaintiff is not entitled to a trial on that issue. According to Defendant,

18

when the jury found that Plaintiff did not prove Defendant unlawfully retaliated against her under the HRA, it necessarily resolved her claim for retaliation under the WPA as well. We disagree.

{37} Plaintiff's claims under the HRA and under the WPA were premised on distinct theories of what caused Defendant's alleged retaliation against her. In regard to the HRA claims, the jury was instructed, in relevant part, that to prove retaliation, Plaintiff was required to show that she suffered an adverse employment action because she opposed an "unlawful discriminatory practice." The phrase "unlawful discriminatory practice" was defined for the jury as follows: (1) "to create a hostile work environment, discharge an employee[,] or to otherwise discriminate on the basis of sex"; or (2) "to discriminate against any person who reports an unlawful discriminatory practice."

{38} Thus, as to Plaintiff's HRA claims, the jury was instructed that an employer engages in an unlawful retaliation if the employee claiming retaliation (1) opposed the creation of a hostile work environment or the discharge of an employee or other discrimination on the basis of sex; or (2) reported the creation of a hostile work environment, the discharge of an employee, or other discrimination on the basis of sex. Plaintiff argues that the jury's determination that Plaintiff did not suffer retaliation on any of the foregoing bases did not answer the question that was raised

by her WPA claims, that is, whether Defendant retaliated against her based on her report of the alleged rape to the residency administrators.

{39} The issue whether Defendant's alleged retaliatory behavior was triggered by Plaintiff's report of the alleged rape alone is distinct from the issue whether Defendant's alleged retaliatory behavior was triggered by Plaintiff's opposition to or report of an "unlawful discriminatory practice" as that phrase was defined for the jury. Accordingly, we hold that the jury's determination of no retaliation under the HRA did not preclude a determination that Defendant retaliated against Plaintiff in violation of the WPA, and we remand this matter to the district court for further proceedings related to Plaintiff's WPA claims.

{40} Recognizing that we might hold that the WPA claims were viable, Defendant argues that we should affirm the district court's dismissal of Plaintiff's WPA claims on the basis that the WPA is unconstitutional. Defendant argues that the WPA is void for vagueness because it "sets no discernable standard for compliance" and fails to define crucial terms such as "information" and "about." The district court, having dismissed Plaintiff's WPA claims on another ground, expressly declined to consider the issue whether the WPA is unconstitutional. Accordingly, this issue is not properly before this Court and will not be considered. *See Lewis v. City of Santa Fe*, 2005-

20

NMCA-032, ¶ 19, 137 N.M. 152, 108 P.3d 558 (declining to consider an issue upon which the district court had not passed).

**2.      Plaintiff's Breach of Contract Arguments**

{41}    In the amended complaint, Plaintiff stated a claim for wrongful discharge premised on the theory that, by terminating her from the residency program without just cause, Defendant had breached the Graduate Medical Education Agreement (the employment contract). Defendant filed a motion for summary judgment on the ground that Plaintiff's contract claim was precluded as a matter of law, which the district court granted. On appeal, Plaintiff argues that disputed issues of fact existed that rendered summary judgment on this issue improper.

{42}    In summary judgment proceedings, the moving party has the initial burden of making a prima facie showing that it is entitled to summary judgment. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. The moving party may meet this burden by showing "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question[.]" *Id.* (internal quotation marks and citation omitted). "Once this prima facie showing has been made, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts [that] would require trial on the merits." *Id.* (internal quotation marks and citation omitted). In order to meet its burden, the non-movant must provide the court with

21

evidence that justifies a trial on the issues; merely arguing that such evidence exists is insufficient. *Id.*

{43} Defendant set forth the following undisputed facts in support of its motion: (1) "[t]he terms of Plaintiff's employment contract, including applicable policies and procedures, required her to adjudicate her contract dispute through a formal three-step grievance [procedure]"; (2) "[w]hile Plaintiff initiated that process, she did not complete the third step—final and binding arbitration"; and (3) "Plaintiff, having failed to comply with the exclusive dispute resolution provisions of her own contract, including applicable policies and procedures, is precluded as a matter of law from asserting claims against [Defendant] for breach of contract[.]" Attached to Defendant's motion were several exhibits that supported the foregoing statements, including the employment contract and copies of "grievance forms" indicating that Plaintiff had completed only two steps of the three-step grievance procedure.

{44} The district court relied on Defendant's undisputed material facts as the basis for its summary judgment order. Implicit in the court's summary judgment was a determination that Plaintiff failed to meet her burden, under *Romero*, of demonstrating the existence of evidence that would require a trial on the merits. *See id*. On appeal, Plaintiff argues that two issues of fact precluded the court's summary judgment.

{45}     First, Plaintiff argues that there exists a factual issue regarding the basis for her termination from the residency program. In support of her argument, Plaintiff points out that, although the notice of final action by which Defendant terminated Plaintiff from the residency program states that the various forms of conduct for which Plaintiff was terminated constituted "administrative misconduct," the notice of final action "clearly articulate[d] academic and professional objections[.]" Therefore, Plaintiff argues, she was actually terminated for "alleged non-administrative misconduct[.]" Plaintiff argues that since she was not terminated for administrative misconduct, she was not required to follow the three-step grievance procedure upon which the district court's summary judgment order was based. Rather, Plaintiff argues, she was required to and did follow a "bifurcated two-step grievance process" that is applicable to termination based on academic or professional misconduct. Based on the foregoing, Plaintiff argues that the district court erred in concluding as a matter of law that she failed to comply with the three-step grievance procedure required in the employment contract.

{46}     Plaintiff does not supply any evidentiary or legal support for her assertion that, contrary to what was stated in the notice of final action, the actions that led to her termination constituted non-administrative misconduct. We note as well that in Plaintiff's grievance forms, attached to Defendant's motion for summary judgment,

23

Plaintiff referred to the grievance procedure applicable to disciplinary action for administrative misconduct. Accordingly, we are not persuaded that the district court erred in granting Defendant's summary judgment motion. *See id.* (stating that in response to the movant's showing of entitlement to summary judgment, the non-movant must show, rather than merely argue, the existence of evidence that warrants a trial on the merits); *V.P. Clarence Co. v. Colgate*, 1993-NMSC-022, ¶ 2, 115 N.M. 471, 853 P.2d 722 ("[A]rguments of counsel are not evidence upon which a trial court can rely in a summary judgment proceeding.").

{47}    Plaintiff nevertheless argues that even if the grievance procedure applicable to termination on administrative misconduct grounds applied to her, she could not have submitted her dispute to binding arbitration because only the union that negotiated the terms of the employment contract on behalf of all medical residents was permitted to do so. And, according to Plaintiff, the union "did not elect to proceed to the third step—binding arbitration[.]" In Plaintiff's view, she "exhausted her remedies within the UNM system" by completing the only two steps of the grievance procedure that she, personally, could do. From our review of the record, we conclude that Plaintiff failed in the district court to provide any evidence in support of this argument. Specifically, Plaintiff does not point to any evidence demonstrating that she attempted but the union refused to submit her grievance to arbitration, thus leaving her unable

to complete the grievance procedure. Plaintiff's arguments on appeal are unsupported by citations to the record on appeal and fail to demonstrate grounds for reversing the district court's summary judgment order. *See id.*; *Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (stating that, on appeal, this Court will not rely on the arguments and assertions of counsel that are unsupported by citations to the record).

**3.    Plaintiff's TCA Arguments**

{48}    The district court granted Defendant's motion to dismiss Plaintiff's tort claims because Plaintiff failed to comply with the TCA's notice requirement. Plaintiff argues that the court erred in concluding that she failed to meet the TCA's notice requirements. She also argues that the merits of her tort claims precluded dismissal. Because we affirm the district court's dismissal on the notice issue, we do not consider Plaintiff's remaining TCA arguments.

{49}    Under the TCA, a person who claims damages against a public entity is required to provide the administrative head of the public entity with written notice stating the "time, place[,] and circumstances of the loss or injury" that gave rise to the claim. Section 41-4-16(A). Unless the public entity has been given notice as required in Section 41-4-16(A) or unless the public entity had "actual notice of the occurrence[,]" a court is jurisdictionally barred from considering the matter. Section

25

41-4-16(B). Plaintiff claims that dismissal of her tort claims was improper because, by reporting the alleged rape, Plaintiff provided Defendant with "actual notice" of the occurrence; thus, Plaintiff contends, she satisfied the notice requirement of Section 41-4-16(B). Under the clear constraint of precedent, we disagree.

{50} The purpose of the notice requirement in Section 41-4-16(B) is "to ensure that the agency allegedly at fault is notified that *it may be subject to a lawsuit.*" *City of Las Cruces v. Garcia*, 1984-NMSC-106, ¶ 5, 102 N.M. 25, 690 P.2d 1019 (internal quotation marks and citation omitted); *Dutton v. McKinley Cnty. Bd. of Comm'rs*, 1991-NMCA-130, ¶ 9, 113 N.M. 51, 822 P.2d 1134 (stating that it is "firmly established that the notice required is not simply actual notice of the occurrence of the accident or injury but rather, actual notice that there exists a likelihood that litigation may ensue" (internal quotation marks and citation omitted)). Requiring a potential claimant to provide notice that litigation is likely to ensue is intended to "reasonably alert [the agency] to the necessity of investigating the merits of a potential claim against it." *Smith v. State ex rel. State Dep't of Parks & Recreation*, 1987-NMCA-111, ¶ 12, 106 N.M. 368, 743 P.2d 124; *see also Ferguson v. State Highway Comm'n*, 1982-NMCA-180, ¶ 12, 99 N.M. 194, 656 P.2d 244 (stating that the purpose of the notice requirement under the TCA is to enable an investigation "while the facts are accessible[,]" "to question witnesses[,]" "to protect against

26

simulated or aggravated claims[,]" and "to consider whether to pay the claim or to refuse it").

{51} Plaintiff does not argue on appeal, nor did she allege in the district court, that her report of the alleged rape created or was sufficient to notify Defendant of a likelihood that litigation may ensue. Without such notice, the fact that Plaintiff notified Defendant of the alleged rape does not satisfy Section 41-4-16(B). *Dutton*, 1991-NMCA-130, ¶ 9 (stating that actual knowledge of a plaintiff's alleged injury is insufficient to comply with Section 41-4-16). The district court properly dismissed Plaintiff's TCA claims.

**4. Plaintiff's Jury Instructions Arguments**

{52} In regard to the instructions given to the jury, Plaintiff argues that the district court erred in two ways. Plaintiff's first argument pertains to the instruction that stated the elements of a "hostile work environment" claim. In relevant part, the jury was instructed that to prove her hostile work environment theory, Plaintiff was required to establish that Defendant's "alleged conduct, after it learned of Plaintiff['s] allegations of rape, was based on her sex and was severe and pervasive." Plaintiff argues that because the given instruction included the phrase "severe and pervasive" instead of the phrase "severe or pervasive[,]" as stated in Plaintiff's proffered instruction on this issue, the jury was provided with a misstatement of the law.

{53} Plaintiff's argument regarding the hostile work environment instruction is premised on our Supreme Court's recognition, in *Nava v. City of Santa Fe*, that "generally" a hostile work environment claim requires showing that "the harassment was sufficiently severe or pervasive to create an abusive work environment[.]" 2004-NMSC-039, ¶ 6, 136 N.M. 647, 103 P.3d 571 (quoting Lawrence Solotoff & Henry S. Kramer, *Sex Discrimination and Sexual Harassment in the Work Place* § 3.04[2], at 3-31 (2004)) (internal quotation marks omitted). The *Nava* Court also observed, however, that in New Mexico the HRA has been interpreted to require conduct that is "so severe and pervasive that . . . the workplace is transformed into a hostile and abusive environment for the employee." *Nava*, 2004-NMSC-039, ¶ 5 (quoting *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 24, 135 N.M. 539, 91 P.3d 58) (internal quotation marks omitted). The phrase "severe and pervasive" used in *Ocana* and recognized in *Nava* continued, after *Nava*, to be employed by our Supreme Court in the context of hostile work environment claims. *See, eg.*, *Ulibarri v. State*, 2006-NMSC-009, ¶ 13, 139 N.M. 193, 131 P.3d 43 ("The alleged harassment . . . was not sufficiently severe and pervasive to support [the p]laintiff's claim.").

{54} The issue in the present case, whether harassment must be "severe and pervasive" or "severe or pervasive" was not considered by the *Nava* Court, and therefore, *Nava* is not authority for Plaintiff's argument. *Ramirez v. Dawson Prod.*

28

*Partners, Inc.*, 2000-NMCA-011, ¶ 10, 128 N.M. 601, 995 P.2d 1043 ("[C]ases are not authority for propositions they do not consider."). Further, we are not persuaded that, by its mere recognition of a general rule cited in a treatise, the *Nava* Court intended to announce a new standard applicable to hostile work environment claims in New Mexico. Accordingly, we conclude that the district court's instructions to the jury on this issue accurately stated the law.

{55}     Plaintiff's second argument in regard to the jury instructions is a generalized complaint that the district court failed to give the jury Plaintiff's proffered instructions pertaining to three issues: Defendant's failure to conduct an adequate and fair investigation into the alleged rape, its failure to prepare a written report on the alleged rape, and its failure "to respond" to Plaintiff's reports that she felt "traumatized, terrified, intimidated[,] and unable to work or learn" when she was required to interact with the senior resident. Insofar as we can tell from Plaintiff's briefing, Plaintiff's argument regarding Defendant's failure to prepare a written report is raised for the first time on appeal. Therefore, this issue will not be considered. *See Wolfley v. Real Estate Comm'n*, 1983-NMSC-064, ¶ 5, 100 N.M. 187, 668 P.2d 303 (stating that the appellate courts will not consider theories that are raised for the first time on appeal).

{56} As to Plaintiff's contention that the district court erred in failing to instruct the jury in regard to Defendant's failure to conduct an investigation into the alleged rape and its failure "to respond" to Plaintiff in a particular manner, Plaintiff fails to demonstrate where, in the record, facts to support these instructions were argued before the district court, argued at trial, or supported by evidence that was presented to the jury. *See* Rule 12-213(A)(4) NMRA (requiring the appellant to include in the brief in chief citations to the record proper, transcript of proceedings, or exhibits relied upon in support of each argument). We will not search the record on Plaintiff's behalf; accordingly, Plaintiff's argument provides no grounds for reversal. *See Muse*, 2009-NMCA-003, ¶ 72 (stating that this Court "will not search the record for facts, arguments, and rulings in order to support generalized arguments").

**5.     Conclusion of Issues in Plaintiff's Appeal**

{57} In summary, we reverse the district court's order dismissing Plaintiff's WPA claim. As to all other issues raised by Plaintiff, we affirm. We turn now to Defendant's cross-appeal.

**B.     Defendant's Cross-Appeal**

{58} Defendant's cross-appeal pertains to the district court's decisions regarding its requested costs and attorney fees. As to the costs issue, Defendant relies upon both Rule 1-068 and Rule 1-054. Since the jury did not enter a judgment in favor of

Plaintiff, Rule 1-068 does not apply under the circumstances of this case. *See* Rule 1-068(A) ("If an offer of settlement made by a defending party is not accepted and the judgment finally obtained by the claimant is not more favorable than the offer, the claimant must pay the costs . . . incurred by the defending party after the making of the offer[.]"); *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 100, 134 N.M. 77, 73 P.3d 215 ("Rule 1-068 . . . does not apply where the judgment is entered against [a] plaintiff-offeree and in favor of a defendant-offeror."). Accordingly, we limit our review of the costs issue to Defendant's arguments under Rule 1-054.

{59} Pursuant to Rule 1-054(D)(1), "costs . . . shall be allowed to the prevailing party unless the court otherwise directs[.]" Attorney fees awards are governed by the American rule, which provides that "absent statutory or other authority, . . . each party should bear its own attorney fees"; an exception to the American rule is the court's power "to sanction the bad faith conduct of litigants and attorneys[.]" *Clark v. Sims*, 2009-NMCA-118, ¶ 21, 147 N.M. 252, 219 P.3d 20 (internal quotation marks and citation omitted). The district court's decisions regarding costs and attorney fees are reviewed for an abuse of discretion. *Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶¶ 47, 53, 135 N.M. 641, 92 P.3d 653.

{60} Defendant filed motions seeking to recover attorney fees in an amount not specified in the record, and costs, totaling $39,442.05. The district court found that,

31

at trial, Plaintiff testified that she had "earned almost no money. However, Plaintiff has a medical degree and it was established at trial that Plaintiff had done little, to nothing, to seek employment from the time of her termination to the time of trial." The court determined that, although the foregoing facts did not support an "outright denial of Defendant's cost bill[,]" they did warrant reducing certain costs that Defendant sought to recover. The district court ultimately awarded Defendant costs totaling $16,661.16. The district court denied Defendant's request for attorney fees, reasoning that the HRA does not allow attorney fees for a prevailing Defendant and that Plaintiff's case was not brought in bad faith, nor was it unreasonable, frivolous, or lacking a foundation.

{61}     Defendant argues that it was error for the district court to deny its costs for certain depositions on the ground that they were not used at trial or in support of summary judgment, as well as its electronic filing fees, its charges for obtaining Plaintiff's medical records, witness fees that it paid to Plaintiff's psychiatrist who was not qualified as an expert, and transcript fees that were not requested or approved by the court. Additionally, Defendant argues that the court erred in reducing its jury consultant fees from the total sum of $18,298.31 to the awarded sum of $2000. With the exception of the court's denial of Defendant's electronic filing fees, which was

32

based on a misconstruction of Rule 1-054(D)(2)(a), we conclude that the district court properly exercised its discretion in its decision regarding costs.

{62}    Pursuant to the Rules of the District Court of the Second Judicial District, Defendant was required to file all of its court documents electronically. *See* LR2-303 NMRA (stating that in the Second Judicial District Court, in civil, domestic relations, and probate actions, "[t]he electronic filing of documents . . . is mandatory for parties represented by attorneys"). Having prevailed against Plaintiff in this lawsuit, Defendant sought to recover its electronic filing fee costs of $330. The district court refused to award Defendant's filing fees on the ground that "Rule 1-054 does not allow for the recovery of e-filing charges."

{63}    Rule 1-054(D)(2)(a) provides that "filing fees" are generally recoverable. Rule 1-005(F) NMRA, governing the service and filing of pleadings and other papers with the court, provides that " '[f]iling' shall include . . . filing an electronic copy[.]" Nothing in these rules suggests that the cost of electronically filing court documents is excluded from Rule 1-054(D)(2)(a)'s provision that filing fees are generally recoverable. Further, to conclude that electronic filing fees comprise an exception to Rule 1-054(D)(2)(a) would absurdly render that rule inapplicable to attorney-represented litigants in a civil, domestic relations, or probate action in the Second Judicial District Court who are required to file documents electronically. LR2-303.

33

To avoid this absurd result, and in accord with the language of the rule, we conclude that "filing fees" as that term is used in Rule 1-054(D)(2) includes electronic filing fees.

**{64}** Because the district court's denial of Defendant's costs was expressly based upon its misconstruction of Rule 1-054(D)(2)(a), we conclude that the court abused its discretion in that regard. *See Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 9, 317 P.3d 856 (stating that the district court abuses its discretion when its discretionary decision rests upon a misapprehension of the law), *cert. denied*, 2014-NMCERT-001, 321 P.3d 935. On remand, the district court shall reconsider whether to award Defendant its electronic filing fee costs of $330.

**{65}** Having reviewed Defendant's arguments and the district court's order, we conclude that the court's remaining costs decisions were supported by various provisions of Rule 1-054, and we will not second guess the equitable consideration by the district court of Plaintiff's inability to pay the costs. *See Martinez v. Martinez*, 1997-NMCA-096, ¶ 20, 123 N.M. 816, 945 P.2d 1034 (stating that equitable considerations are appropriate in determining whether to award costs); *Gallegos ex rel. Gallegos v. Sw. Cmty. Health Servs.*, 1994-NMCA-037, ¶ 30, 117 N.M. 481, 872 P.2d 899 ("[T]he losing party's ability to pay is a proper factor to consider in determining whether to award costs."); *see also* Rule 1-054(D)(1) (granting the court

discretion to determine whether to award costs); Rule 1-054(D)(2)(d) (stating that transcript fees are generally recoverable "when requested or approved by the court"); Rule 1-054(D)(2)(e)(i), (ii) (stating, in relevant part, that the cost of a deposition is generally recoverable only when it is used at trial or used in support of a motion for summary judgment); Rule 1-054(D)(2)(g) (providing only that "expert" witness fees are generally recoverable). Accordingly, we are not persuaded that the district court's denial or reduction of Defendant's remaining costs constituted an abuse of discretion.

{66} In regard to attorney fees, Defendant, citing *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1181 (10th Cir. 2005), argues that "[i]n federal employment discrimination actions, the court has discretion to award fees to a prevailing defendant when the plaintiff's claim 'was brought in bad faith, or was frivolous, unreasonable, or without foundation.' " Defendant urges this Court to interpret the HRA to comport with the principle that it has derived from *Sorbo*. Building on the foregoing, Defendant argues further that because "Plaintiff's claims in this litigation were, in fact, unreasonable and without foundation[,]" the district court erred in denying its request for attorney fees under the HRA.

{67} It is unnecessary in this case to determine whether the HRA should be read to comport with the principle that Defendant has derived from *Sorbo*. Had the district court determined that Plaintiff's lawsuit was unreasonable or without foundation, it

was free to exercise its discretion to award attorney fees to Defendant. *See Clark*, 2009-NMCA-118, ¶ 21 (stating that, pursuant to the American Rule, a district court may award a prevailing party its attorney fees on the ground that the losing party acted in bad faith). The district court expressly found that Plaintiff's lawsuit was not unreasonable and was not brought "without foundation[.]" Defendant does not attack the district court's determination in that regard, and it is conclusive. *See* Rule 12-213(A)(4) (stating that where a party does not specifically attack a finding, the finding shall be deemed conclusive). Accordingly, Defendant's assertion that Plaintiff's lawsuit was "in fact, unreasonable and without foundation" is contradicted by the district court's conclusive finding to the contrary. Defendant's attorney fees argument provides no grounds for reversal.

{68}  In sum, as to Defendant's cross-appeal, we reverse the district court's decision to deny the cost of Defendant's electronic filing fees. On remand, the district court shall consider whether those costs should be awarded to Defendant. As to the court's remaining decisions regarding costs and attorney fees, we affirm.

**CONCLUSION**

{69}  We reverse the district court's dismissal of Plaintiff's WPA claim. We also reverse the district court's denial of Defendant's request to recover the cost of its

electronic filing fees. We remand for further proceedings as to these issues. As to all remaining issues raised in Plaintiff's appeal and Defendant's cross-appeal, we affirm.

{70}    **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____

**CYNTHIA A. FRY, Judge**


_____

**LINDA M. VANZI, Judge**